**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHER DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **DAVID LAWSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No. 12 C 6824** |
| v. | ) | |
| | ) | **Judge Shadur** |
| **CHICAGO RAIL LINK, LLC** | ) | |
| | ) | **Magistrate Judge Cole** |
| **Defendant.** | ) | |

**MEMORANDUM OPINION**

On June 10, 2013, I scheduled a settlement conference for August 13, which was the date selected by the parties. The videotaped deposition of the plaintiff had been taken 3 months earlier on March 11 by the defendant, who of course, had access to all its own records. The plaintiff submitted its position paper on July 30. By the time the defendant submitted its August 5th responsive position paper to the court, it had had access to the plaintiff's medical and psychiatric records. The defendant's barely nuisance value settlement offer reflected the defendant's apparent view of the case as being meritless, and the plaintiff's demand, which was almost 40 times that of the defendant's offer, was unrealistic.

Of course, large disparities in offers and demands are not unknown, and cases do settle despite seemingly unbridgeable gaps and small offers in the face of large demands may reflect a more accurate and realistic view of the case. However, this case was different because the defendant had, a week before the settlement conference, decided that its minimal offer was not negotiable and that it would not up the ante at all. That was a perfectly legitimate decision. But, what was not legitimate was the defendant's decision to withhold that information from the court thus requiring the court to squander hours preparing for the conference and allowing the conference to proceed

for 1 1/4 hours before informing the court of its inflexibility.

Had I been informed of the defendant's position, I would have communicated with the plaintiff to see if he had any interest in proceeding, and no doubt the conference would have been canceled, thereby freeing me from having to spend the substantial time that I did in preparing for and participating in the conference. The plaintiff's submission was 4 single-spaced pages, and the defendant's responsive submission consisted of 5 single-spaced pages and 9 exhibits, one of which was the 130-page deposition of the defendant, which I read in its entirety prior to the conference. By waiting for 1 1/4 hours before the defendant announced its decision not to negotiate its minimal offer – which the defendant certainly knew the plaintiff would not accept – the defendant's lawyer further squandered the court's time.

Notwithstanding the importance of settlements, *Marek v. Chesny*, 473 U.S. 1 (1985), producing as they do "peace for the parties and freeing scarce judicial time to attend to litigants who need it," *Matter of Memorial Hosp. of Iowa County, Inc.,* 862 F.2d 1299, 1302 (7th Cir. 1988)(Easterbrook, J.), parties cannot and ought not be pressured into settlements that they believe are not warranted. *Goss Graphics Sys., Inc. v. Dev Indus., Inc.,* 267 F.3d 624, 627 (7th Cir. 2001). "If the parties want to duke it out, that's their privilege." *Id*. at 627-28. "A district court is not permitted to coerce a settlement. .... Imposing sanctions on a party that did not wish to settle under terms the district judge thought appropriate would constitute coercion by the district judge." *Tsironis v. Bismarck Hotel*, 1996 WL 15830, 2 (7th Cir.1996). *See also Strandell v. Jackson County, Illinois*, 838 F.2d 884,887 (7th Cir. 1988).

This is a principle to which I am firmly committed. *See Kelley v. Board of Educ. of City of*

*Chicago*, 2012 WL 1108135, 6 (N.D.Ill.2012)(Cole, M.J.)("Although federal courts have the authority to require parties to engage in settlement discussions, they have no authority to force a settlement. *[citations omitted]*. Requiring the parties to attend a formal settlement conference at this point would have some tendency to be coercive and, more importantly, would not be an efficient use of judicial resources. Requiring the parties to attend a conference on May 15, 2012 will accommodate the parties' interests.").

But the issue here is not about the permissibility of a lawyer insisting on settlement terms deemed in the client's best interests. It is, rather, about a lawyer whose blatant disregard of the court's time resulted in the needless expenditure of a not insubstantial amount of judicial resources, which courts have emphasized time and again, all too scarce. *McQuiggin v. Perkins,* _U.S._, 133 S.Ct. 1924, 1926 (2013); *Ball v. City of Chicago,* 2 F.3d 752, 753 -754 (7th Cir. 1993); *Matter of Memorial Hosp. of Iowa County, Inc.,* 862 F.2d 1299, 1302 (7th Cir. 1988); *Regional Transportation Authority v. Grumman Flxible Corp.,* 532 F.Supp. 665 (N.D. Ill. 1982)(Shadur, J.); *United States v. Board of Ed. of City of Chicago,* 88 F.R.D. 679, 685 (N.D.Ill. 1981)(Shadur, J.). *See also Airframe Systems, Inc. v. Raytheon Co.,* 601 F.3d 9, 14 (1st Cir. 2010); *Roscoe v. Salazar,* 1996 WL 421957, 2 (10th Cir. 1996); *United States v. Alcan Aluminum, Inc.,* 25 F.3d 1174, 1183 (3rd Cir. 1994).

When litigants squander a court's time, they "divert time from litigants patiently waiting in the queue for the limited time of federal judges." *Channell v. Citicorp Nat. Services, Inc.,* 89 F.3d 379, 386 -387 (7th Cir. 1996). *See also Matter of Memorial Hospital of Iowa County, Inc.*, *supra.*

By not informing the court before the conference that its position was nonnegotiable and by waiting

3

almost 1 1/4 hours into the conference to make the announcement, the plaintiff's lawyer squandered hours of the court's time.

This was no mere oversight by a young and inexperienced lawyer. The defendant's lawyer, Mr. Ronald Lane, is a lawyer of vast experience, who has been at the bar for almost 40 years. His firm's website boasts that he is "an active litigator in federal courts across the country," "litigat[ing] commercial and employment disputes." "He was Vice President-Law and General Counsel of Illinois Central Railroad and its public holding company, Illinois Central Corporation." The website notes that Mr. Lane has also held a succession of legal positions at the Atchison, Topeka & Santa Fe Railroad and served as its Assistant Vice President.

When I asked Mr. Lane why he had not told me at least at the beginning of the conference of the defendant's rigid position – if not earlier – so we could have saved everyone's time and money, he tried to say that the defendant had only learned a week ago that if the case did not settle the plaintiff would seek to expand the damages by arguing that the plaintiff's heart condition was causally related to the stress from the conduct alleged in the complaint. When I responded again that that did not alter the fact that he had a week to inform the court and that the reason he had just given would counsel in favor of flexibility not the opposite, there was no answer, only a perfunctory and insincere "I'm sorry."

The question is what to do. If I had the authority, I would sanction Mr. Lane by at least requiring him to pay the fees and costs incurred by the plaintiff and his lawyer in preparing for and attending the conference. But, unlike the rule in every other Circuit in the country, the Seventh Circuit does not permit magistrate judges to issue sanctions. *See Cleversafe, Inc. v. Amplidata, Inc.*, 287 F.R.D. 424, 428 (N.D.Ill. 2012)(collecting cases). District judges, of course, have the inherent

authority to sanction a lawyer who acts in bad faith, vexatiously, wantonly, or for oppressive reasons. *Chambers v. NASCO, Inc.,* 501 U.S. 32, 45-46 (1991); *Stive v. United States,* 366 F.3d 520, 521 (7th Cir. 2004). And they have similar authority under 28 U.S.C. § 1927 to sanction counsel who act recklessly or show indifference to statutes, rules, or court orders. *Grochocinski v. Mayer Brown Rowe & Maw, LLP ,* 719 F.3d 785, 799 (7th Cir. 2013).[1]

Exactly what constitutes bad faith has been the subject of some uncertainty. Courts have used phrases such as harassment, unnecessary delay, needless increase in the cost of litigation, willful disobedience, and recklessly making a frivolous claim. Cases have also noted, when analyzing the meaning of "unreasonably and vexatiously" in the similar context of 28 U.S.C. § 1927, that the term "bad faith" has both a subjective and objective meaning, and often treat reckless and intentional conduct equally. Furthermore, bad faith may occur beyond the filing of the case and may be found, in the conduct of the litigation. *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 766 (1980); *Mach v. Will County Sheriff,* 580 F.3d 495, 501 (7th Cir. 2009).

Of course, a district court must exercise restraint and caution in exercising its inherent power. *Schmude v. Sheahan,* 420 F.3d 645, 650 (7th Cir.2005). It is not a generalized undifferentiated grant of authority to do good, to rectify shortcomings of the common law, or supplant the American rule on the award of attorneys' fees to the prevailing party in the absence of statute. *Zapata Hermanos Sucesores, S.A. v. Hearthside Baking Co., Inc.,* 313 F.3d 385, 391 (7th Cir. 2002). And more than

---

[1] In this case, the court's extensive order setting the case for a settlement conference [#23] plainly envisioned a meeting with counsel and their clients, each of whom had to have "FULL AUTHORITY" to settle the case, at which there would be a give and take in an attempt to amicably resolve the case. Mr. Lane was under no illusions about the obligations imposed on him and his client by that order. He simply ignored them. A settlement conference is about give and take. Mr. Lane came to the conference knowing fully there would be no give. Again, the point of all this is not that Mr. Lane and his client had decided on an amount of money beyond which they were unwilling to go. That was their prerogative. It is about their purposeful and calculated decision not to inform the court until 1 1/4 hours into the settlement conference.

mere negligence is required. *See Grochocinski,* 719 F.3d at 799; *Maynard v. Nygren,* 332 F.3d 462, 471 (7th Cir.2003). Here, there was bad faith, not merely oversight or inefficiency. Mr. Lane knew that "[t]he doom of mere sterility was [present on the settlement conference] ... from the beginning." *Clark v. United States,* 289 U.S. 1, 11 (1933)(Cardozo, J.). And yet, he proceeded in the fashion that he did.

Mr. Lane could not have been unaware of what he was doing or the effect it would have on the court's time and on plaintiff's counsel's time. By imposing an appropriate sanction, general and specific deterrence will be achieved, and those are the desiderata of any attorney's fee award whether under the Federal Rules of Civil Procedure or §1927 or the court's inherent authority. *Cf.*, *Sambrano v. Mabus,* 663 F.3d 879, 881-882 (7th Cir. 2011)("Sanctions such as orders to pay the other side's attorneys' fees may redress injuries done to put-upon adversaries....").[2]

But to take the matter further would require that I issue a Report and Recommendation, which Judge Shadur would then have to review *de novo*, Rule 72(b), Federal Rules of Civil Procedure, with a further expenditure of judicial resources. That does not seem a productive course. But I would be remiss if I did not register in some fashion my views about what occurred here.

---

[2] *See also United States Freight Co. v. Penn Cent. Transp. Co.*, 716 F.2d 954, 955 (2nd Cir.1983)("General deterrence, rather than mere remediation of the particular parties' conduct, is a goal under Rule 37; unconditional impositions of sanctions are necessary to deter 'other parties to other lawsuits' from flouting 'other discovery orders of other district courts.'" ).

ENTERED: _____
UNITED STATES MAGISTRATE JUDGE

**DATE:** 8/15/13